IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Thomas B. Summerell, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 8:20-cv-1586-TMC |
| v. ) | |
| ) | **ORDER** |
| Clemson University, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Thomas B. Summerell commenced this action against Defendant Clemson University in state court, asserting claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. (ECF No. 1-1 at 9–14). Clemson removed the case to federal court in April 2020, (ECF No. 1), and, in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred to a magistrate judge for all pretrial proceedings. Clemson filed a motion for summary judgment. (ECF No. 32). Summerell then submitted a response in opposition (ECF No. 33) and Clemson filed a reply (ECF No. 36).

Now before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court grant Clemson's motion for summary judgment. (ECF No. 37). Summerell filed objections to the Report, (ECF No. 38), to which Clemson filed a response (ECF No. 39). Having carefully reviewed the briefs and pleadings before it, the court concludes the parties have adequately developed the issues and, therefore, a hearing is unnecessary to decide the matter before the court.

# I. Background

Viewed in a light most favorable to Summerell, the non-moving party, the relevant facts are these. Beginning in 2016, Summerell was employed by Clemson as a member of a landscape maintenance crew. (ECF No. 33-2 at 2). His duties included pruning plants and trees and preparing pant and soil samples, (ECF No. 32-3 at 15–16), and he used primarily "small tools or equipment like rakes [and] blowers." (ECF No. 33-2 at 2). On occasion, Summerell operated a Gator in the performance of his duties or, even less frequently, a pickup truck. *Id*. Prior to his employment at Clemson, Summerell suffered severe facial injuries in an automobile accident resulting in severe and chronic pain and depression. *Id*. at 1–2. For these injuries, Summerell was prescribed pain medication before and after Clemson hired him. *Id*. Nonetheless, Summerell appeared to perform his job competently and, until January 2019, Clemson had never indicated to Summerell that his performance was inadequate or unsatisfactory. (ECF Nos. 33-2 at 3; 33-6).

In November 2018, Summerell's supervisors Mark Albertson and Billy Grant claimed, based on their own observations, that Summerell had reported for work while under the influence of drugs. (ECF No. 32-8 at 2). Linda Smotherman, Human Resources Staff Relations Manager at Clemson, directed Albertson and Grant to monitor the situation and report any further incidents. *Id*. On January 17, 2019, according to his supervisors, Summerell was again "lethargic, slurring his speech and at times unintelligible . . . having pinpoint pupils" at work. *Id*. Subsequently, Smotherman met with Summerell and, after observing him in person, suspended Summerell without pay and told him that, before he could return to work, his most recent physician needed to sign a "fit for duty" form indicating Summerell was capable of fulfilling the essential duties of his job. (ECF Nos. 1-1 at 10; 32-8 at 3; 32-6).

2

In a letter to Summerell dated January 22, 2019, Smotherman memorialized Clemson's concerns about his fitness for duty and advised him that he was subject to unpaid leave "until a licensed medical provider ha[d] evaluated [his] fitness to perform [his] work duties with or without reasonable accommodations." (ECF No. 33-23 at 1). Accordingly, Summerell met with Dr. Brian Redmon and Clemson provided information to Dr. Redmon detailing its concerns about Summerell's alleged behavior. (ECF No. 33-7). Dr. Redmon concluded that "from a physical standpoint [he did] not have [work] restrictions for [Summerell]" but that he could not assess the drug use issue because he had not personally observed the purported conduct and, in any event, such issues fell outside the scope of his practice. *Id*. at 11. Summerell made at least one other attempt to have another health care provider certify his fitness to return to work but encountered similar problems. (ECF No. 33-2 at 3–4). Finally, in March 2019, Smotherman sent Summerell to the Sullivan Center, Clemson's on-campus health care facility, to have a fitness assessment performed by nurse practitioner William Mayo. (ECF Nos. 32-8; 33-2 at 4). Upon review of records from Summerell's former treating health care providers at Pain Management Associates, Mayo noted various medications that might make it difficult to safely operate certain equipment and determined that he could not "rule out the clear potential for harm/risk of harm . . . and [could] not support reinstatement to work." (ECF No. 32-9 at 44–45, 121).

In light of this information, on May 16, 2019, HR representative Joy Patton sent Summerell a letter indicating that he needed to provide the Sullivan Center with "a note from [his] new pain management physician clearing [him] to return to work " and advising Summerell that the failure to do so by May 30, 2019 would result in his termination. (ECF No. 32-10 at 7). Summerell responded on May 23, 2019, outlining his substantial efforts to obtain not only a doctor willing to complete the entire fitness-to-work form but also to find another pain management doctor: "I am

unable to [present a note from my new pain management physician]. I do not have a new pain management physician. And, I can assure you it is not for lack of trying. In fact, . . . I have made significant effort[s] to contact physician[s'] offices, but have not had any response." *Id*. at 8.

On June 20, 2019, Summerell filed an Equal Opportunity Employment Commission ("EEOC") charge of discrimination against Clemson based on disability, alleging that despite no findings of physical concern by the in-house nurse practitioner, Clemson was still requesting additional medical records and refusing to let him return from unpaid administrative leave. (ECF No. 32-7 at 42). On July 26, 2019, Clemson notified Summerell that his employment had been terminated for failure to complete the fitness-for-duty evaluation. (ECF No. 32-10 at 10). Summerell then filed another EEOC charge, alleging that Clemson had terminated him in retaliation for his having filed the June 20 charge of discrimination. (ECF No. 32-7 at 44).

Finally, having received a Notice of Right to Sue from the EEOC, Summerell filed this action alleging that Clemson failed to reasonably accommodate his disability and terminated him as a result of his disability in violation of the ADA; that Clemson illegally terminated him in retaliation for his filing of an EEOC charge; and that Clemson breached its employment contract with him. (ECF No. 1-1). Following Clemson's removal of this action to federal court, (ECF No. 1), the parties stipulated to the dismissal of the breach of contract claim. (ECF No. 14).

Clemson then filed this motion for summary judgment (ECF No. 32), arguing that it enjoys immunity under the Eleventh Amendment as to Summerell's ADA claims. (ECF No. 32-1 at 9–11); that Summerell failed to administratively exhaust his claims, *id*. at 12–14; that Summerell failed to establish a *prima facie* case of discrimination under the ADA and that there was no evidence that Clemson's non-discriminatory reason for its adverse actions—that Summerell could not provide a certified fit-to-work form—was pretextual, *id*. at 14–18; and that Summerell failed

to establish a *prima facie* case of retaliation and that there was no evidence that Clemson's non-retaliatory reason for firing Summerell—that he could not provide a certified fit-to-work form—was pretextual, *id*. at 18–21.

Summerell filed a memorandum in response, disputing each of Clemson's arguments. (ECF No. 33). Most notably, Summerell asserted that Clemson waived its Eleventh Amendment immunity by accepting federal funds. *Id*. at 10–12. In support of its position, Summerell cites the Rehabilitation Act of 1973, posits that the Rehabilitation Act and the ADA are judged by the same standards, and notes that, even though he did not assert a claim under the Rehabilitation Act, the court should construe his complaint as having done so or permit him to amend the complaint to add such a cause of action. *Id*. In reply, Clemson emphasized that Summerell's only causes of action are for violations of the ADA and that *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001), forecloses any ADA action against Clemson on grounds of immunity. (ECF No. 39 at 2). Additionally, Clemson argued that no amendment should be permitted at this point because Summerell has not filed a motion to do so and has failed to offer good cause under Fed. R. Civ. P. 16 for filing an untimely motion. *Id*. at 3–4.

The magistrate judge concluded that, for Eleventh Amendment purposes, Clemson is an arm of the State of South Carolina and, therefore, enjoys sovereign immunity from lawsuits filed by private citizens in federal court unless: (1) Congress has abrogated Eleventh Amendment immunity for the claims at issue; (2) South Carolina has waived immunity under the circumstances; or (3) the complaint seeks prospective relief against state officials under *Ex Parte Young*, 209 U.S. 123 (1908). (ECF No. 37 at 6). The magistrate judge then determined that none of the foregoing circumstances applied to allow Summerell to avoid the Eleventh Amendment's immunity bar and, therefore, recommended that the court grant Clemson's summary judgment

motion. *Id*. at 6–7. Additionally, the magistrate judge recommended that the court deny Summerell's informal request to amend the complaint, noting that he had not filed a proper motion, that he had not offered cause to excuse the filing of an untimely motion to amend[1], and that no proposed amendment had been offered. *Id*. at 7 n.4. In light of the basis for recommending summary judgment be granted to Clemson, the magistrate judge did not address the parties' remaining arguments. *Id*. at 5 n.2.

## II. Legal Standards

The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Nevertheless, "[t]he district court is only required to review de novo those portions of the report to which specific objections have been made, and need not conduct de novo review 'when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations.'" *Farmer v. McBride*, 177 Fed. App'x 327, 330–31 (4th Cir. April 26, 2006) (quoting *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id*. at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla*., 73 F.3d 1057, 1059 (10th Cir. 1996)). Objections which merely restate arguments already

---

[1] Pursuant to the governing scheduling order, Summerell was required to file such a motion by April 21, 2021. (ECF No. 26).

presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g., Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"). In the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

The magistrate judge applied the correct standard of review as set forth in Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 37 at 3–5). Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

### III. Discussion

In his objections to the Report, (ECF No. 38), Summerell does not challenge the magistrate judge's conclusions that Clemson is an arm of the State of South Carolina and, as such, is immune from his ADA claims. Rather, he objects to the magistrate judge's (1) failure to construe his amended complaint, filed on his behalf by counsel, as having raised a claim pursuant to the Rehabilitation Act against which Clemson would not have immunity, and (2) recommendation that the court deny the request to amend the complaint a second time. *Id*. at 2–4.

First, as to the magistrate judge's analysis and recommendation with respect to Summerell's ADA claims, the court is obliged only to review for clear error in the absence of any objections from Summerell. And, having closely reviewed the Report and the materials submitted by the parties, the court perceives no error, clear or otherwise, and adopts and incorporates the Report's analysis and recommendation as to Summerell's ADA claims.

Next, to the extent Summerell asks the court to "find" that the amended complaint asserts a cause of action pursuant to the Rehabilitation Act, the court declines to do so. Summerell is

represented by legal counsel and the rule requiring lenient construction of *pro se* pleadings does not apply here.

As for Summerell's request for leave to file a second amended complaint after the deadline for doing so under the scheduling order has expired, the court notes, as did the magistrate judge, that Summerell has not bothered to file a formal motion or even articulate a basis upon which the court can find good cause to grant relief under Rule 16(b). "When seeking to amend a pleading after the expiration of the deadline in a scheduling order, a party must show 'good cause' for the amendment under Fed. R. Civ. P. 16(b)." *Waters at Magnolia Bay, LP v. Vaughn & Melton Consulting Engineers, Inc.*, No. 2:20-cv-2546-RMG, 2021 WL 3032719, at *2 (D.S.C. July 19, 2021). "'Good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *George v. Duke Energy Ret. Cash Balance Plan*, 560 F. Supp. 2d 444, 479 (D.S.C. 2008). "If a party meets Rule 16(b)'s 'good cause' standard, then the Court must also inquire as to whether the amendments meet Rule 15(a)'s requirements." *Waters at Magnolia Bay,* 2021 WL 3032719, at *2.

Nonetheless, the court is loath to penalize Summerell for these failures, which are not his own. Accordingly, the court orders as follows:

Clemson's motion for summary judgment (ECF No. 32) is **GRANTED** and the ADA claims against Clemson are hereby **DISMISSED**;

The court grants Summerell 15 days from the date of this order to file a motion to amend the complaint to include a claim under the Rehabilitation Act, showing good cause under the applicable standards why he should be permitted to do so out of time and attaching the proposed amended pleading.

The matter is returned to the able magistrate judge to consider the motion to amend and provide a recommendation to the court.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

December 14, 2021
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.